# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID MAURICE GOMEZ,<br><br>        Plaintiff,<br><br>    v.<br><br>WARDEN A. K. SCRIBNER, et al.,<br><br>        Defendants. | CASE NO. 1:03-CV-6290-OWW-LJO-P<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BE GRANTED IN PART AND DENIED IN PART<br><br>(Doc. 55) |

I.    Defendants' Motion for Summary Judgment

    A.    Procedural History

Plaintiff David Maurice Gomez ("plaintiff") is a state prisoner proceeding pro se in this civil rights action pursuant to 42 U.S.C. § 1983. This action is proceeding on plaintiff's amended complaint, filed October 21, 2003, against defendants Scribner, Bailey, Saddi, German, Rocha, and Costella for failing to protect plaintiff, in violation of the Eighth Amendment, and against defendants Bailey, Saddi, German, and Luna for acting with deliberate indifference to his medical needs, in violation of the Eighth Amendment. On July 19, 2005, defendants Scribner, Bailey, Saddi, German, Rocha, and Costella filed a motion for summary judgment.[1] (Docs. 55-57, 59-61.) Plaintiff filed

///

---

[1] The Marshal was unable to locate defendant Luna. A second attempt to locate defendant is in process. (Doc. 72.)

1

an opposition on August 12, 2005, and a supplemental declaration on October 20, 2005.[2] (Docs. 67, 82.)

      B.    <u>Legal Standard</u>

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Under summary judgment practice, the moving party

> [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" <u>Id</u>. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. <u>Id</u>. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." <u>Id</u>. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." <u>Id</u>. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Rule 56(e); <u>Matsushita</u>, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that

---

[2] Plaintiff was provided with notice of the requirements for opposing a motion for summary judgment by the court in an order filed on October 20, 2004. <u>Klingele v. Eikenberry</u>, 849 F.2d 409 (9th Cir. 1988). (Doc. 18.)

2

might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Rule 56(c). The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

///
///
///

    C.    <u>Discussion</u>

        1.    <u>Undisputed Facts</u>

1. On April 14, 2003, an Institutional Classification Committee (ICC) approved plaintiff for transfer to a Security Housing Unit (SHU) at the California Correctional Institution at Tehachapi or at California State Prison, Corcoran (Corcoran).
2. The ICC determined that plaintiff continued to need single celling and walk alone status. The ICC noted a violent history, and that plaintiff was debriefing and needed psychiatric treatment.
3. On May 8, 2003, plaintiff was transferred to Corcoran.
4. On May 28, 2003, an ICC retained plaintiff for mental health treatment, single celling, and walk alone status.
5. The ICC noted that plaintiff was debriefing and that the process would continue once he completed the determinate SHU terms.
6. On the afternoon of June 26, 2003, plaintiff was released from his cell for a shower.
7. Since he was on walk alone status, plaintiff was the only inmate released for showers, and he was the only inmate in the unit who was out of his cell.
8. Plaintiff showered in the second tier shower.
9. Plaintiff came to the control booth and said something to Correctional Officer Saddi.
10. Plaintiff spoke with Correctional Officer Bailey.
11. At 5:20 p.m., plaintiff was seen by RN Luna.
12. Plaintiff told Luna he had been stabbed while showering at approximately 4:45 p.m.
13. RN Luna observed a cut above plaintiff's eye.
14. On June 28, 2003, at 9:00 p.m., plaintiff was seen by RN Miller.
15. Plaintiff's left eye was swollen.
16. RN Miller found a small object lodged above plaintiff's left eye.
17. Dr. Kim removed a small, foreign object from plaintiff's left eyebrow.
18. Dr. Kim removed the tiny object using forceps and a local anesthetic.
19. Plaintiff was returned to his cell at approximately 10:10 p.m.

20. Plaintiff was in the SHU on walk alone status to keep him safe and protect him from harm.

### 2. Allegations in Amended Complaint

In his amended complaint, plaintiff alleges that on June 26, 2003, on his way back from his shower, he was stabbed in the eye by an inmate known as "Osito." Plaintiff alleges that the prison guards not only could have prevented the assault but conspired to set it up and bet on the outcome.

Plaintiff alleges that he is a documented informant and Mexican Mafia drop-out, and resides in a housing unit full of his known enemies. Plaintiff alleges that he complained to staff, including defendant Rocha, about the situation long before the attack of June 26 occurred. Three days before the attack, plaintiff's attorney wrote a letter to Warden Scribner, identified the enemies in plaintiff's housing unit, and demanded that plaintiff be moved to a protective custody building. Plaintiff was not moved.

On June 24, 2003, days before the attack, plaintiff alleges that he gave defendant Costello a list of his known enemies, which included Osito, but neither Osito nor plaintiff was moved.

On June 26, plaintiff alleges that defendant Saddi released plaintiff from his cell and directed plaintiff to go upstairs and use the upper tier shower, which was not normal procedure since plaintiff's cell is on the lower floor. Defendant Saddi told plaintiff that the bottom tier shower was not working. On his way back from the shower, plaintiff passed Osito's cell and was stabbed in the eye with a spear, causing plaintiff's eye to bleed profusely.

Plaintiff went downstairs to the control booth and informed defendant Saddi that he had just been stabbed and needed to see a nurse and the sergeant. Defendant Saddi told him, "No, that's what you get."

Plaintiff tried to get help from defendants Bailey and German, but they told him to lock up. Defendant German told plaintiff to tell the nurse when she made her rounds. Five minutes later, defendant German approached plaintiff's cell and told plaintiff that they were going to honor his wish to see a sergeant. Plaintiff was escorted to and placed in a holding cell in the rotunda by defendants German and Bailey, where he remained for an hour.

After plaintiff was placed in the holding cell, defendant Saddi resumed allowing inmates to shower, and allowed inmates to use the lower tier shower.

While in the holding cell, plaintiff observed defendants German and Bailey laughing and talking, and heard defendant German say, "I told you he would get speared within 30 days of that new electronic door opening policy, you said 60 days, so you owe me twenty bucks." Defendant Bailey then placed several bills on the table.

Plaintiff was subsequently returned to his cell without seeing a sergeant.

Defendant Luna, a nurse, made her rounds at that time, and asked defendants German and Bailey to remove plaintiff from his cell so that she could better see his wound. Defendant Luna did not treat or clean plaintiff's eye, but informed plaintiff that she would contact the emergency room when plaintiff expressed concern that there was a piece of metal in his eye.

Defendant Luna returned to plaintiff's cell with defendants German and Bailey, and told plaintiff that the emergency room nurse refused to see him and that he should fill out a sick-call slip to be placed on the doctor's line for the next week. Defendant Luna then gave plaintiff some antibiotic ointment and left.

On June 28, 2003, Nurse Miller stopped to examine plaintiff's wound while making his rounds and discovered a piece of metal in plaintiff's eye. Miller had Officer Huerta escort plaintiff to the emergency room, where Dr. Kim removed a metal spear tip from plaintiff's eye.

### 3. Eighth Amendment Failure-to-Protect Claim

To constitute cruel and unusual punishment in violation of the Eighth Amendment, prison conditions must involve "the wanton and unnecessary infliction of pain . . . ." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety. Id.; Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986); Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir. 1982). Where a prisoner alleges injuries stemming from unsafe conditions of confinement, prison officials may be held liable only if they acted with "deliberate indifference to a substantial risk of serious harm." Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).

The deliberate indifference standard involves an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious . . . ." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)). Second, the prison official

must "know[] of and disregard[] an excessive risk to inmate health or safety . . . ." <u>Farmer</u>, 511 U.S. at 837. Thus, a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of harm and disregards that risk by failing to take reasonable measures to abate it. <u>Id</u>. at 837-45. Prison officials may avoid liability by presenting evidence that they lacked knowledge of the risk, or by presenting evidence of a reasonable, albeit unsuccessful, response to the risk. <u>Id</u>. at 844-45. Mere negligence on the part of the prison official is not sufficient to establish liability, but rather, the official's conduct must have been wanton. <u>Id</u>. at 835; <u>Frost</u>, 152 F.3d at 1128.

"What is necessary to show sufficient harm for purposes of the Cruel and Unusual Punishment Clause depends upon the claim at issue . . . ." <u>Hudson v. McMillian</u>, 503 U.S. 1, 8 (1992). "The objective component of an Eighth Amendment claim is . . . contextual and responsive to contemporary standards of decency." <u>Id</u>. at 8 (quotations and citations omitted). "[E]xtreme deprivations are required to make out a[n] [Eighth Amendment] conditions-of-confinement claim." <u>Id</u>. at 9 (citation omitted). With respect to this type of claim, "[b]ecause routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." <u>Id</u>. (quotations and citations omitted).

It is undisputed that plaintiff was transferred to Corcoran on May 8, 2003, and that a determination had been made that plaintiff needed mental health treatment, single celling, and walk alone status. (U.F. 3, 4.) It is also undisputed that on the afternoon of June 26, 2003, plaintiff was released from his cell for a shower, and that due to his walk alone status, plaintiff was the only inmate released for showers and the only inmate in the unit who was out of his cell. (U.F. 6, 7.)

Defendant Saddi contends that plaintiff, who was celled on the lower tier, chose to shower in the top tier shower and was not directed to do so by defendant Saddi. (Saddi Dec., ¶ 3.) Defendant Saddi contends that after plaintiff finished showering, the shower door was opened and plaintiff made a left turn, passing cell number 15 rather than cell number 16, where Osito was allegedly housed. (<u>Id</u>., ¶ 4.) Defendants Saddi and Bailey contend that plaintiff came down the stairs normally and walked toward the control booth rather than to his assigned cell. (Saddi Dec., ¶ 4;

Bailey Dec., ¶ 4.) Defendant Saddi contends that plaintiff was saying something, but he could not hear because of the thick control booth glass and noise echoes in the tier, so he asked defendant Bailey to find out what plaintiff was talking about. (Saddi Dec., ¶ 5.) Defendants Saddi and Bailey contend that they did not see plaintiff get stabbed. (Saddi Dec., ¶ 4; Bailey Dec., ¶ 5.) Defendant Saddi did not see any blood on plaintiff's body or towel, and defendant Bailey saw approximately one drop of blood by the corner of plaintiff's eye. (Saddi Dec., ¶ 4; Bailey Dec., ¶ 5.)

Defendants contend that the cell doors in the SHU where plaintiff was housed are solid and the food ports are kept closed except when meals are being served and the food trays are being retrieved, making it impossible for plaintiff to have been stabbed. (Saddi Dec., ¶ 3; Rocha Dec. ¶ 4.) Plaintiff was in the SHU on walk alone status to keep him safe and protect him from harm. (U.F. 20.) Defendants argue that because plaintiff was single-celled and on walk-alone status, it was impossible for any other inmate to harm him.

With respect to defendant Scribner, defendants contend that Scribner had no knowledge of inmate Gomez or his safety needs, and never saw the letters addressed to him concerning inmate Gomez's alleged safety needs. (Scribner Dec., ¶ 2, 4.)

The court finds that defendants have met their initial burden of informing the court of the basis for their motion, and identifying those portions of the record which they believe demonstrate the absence of a genuine issue of material fact. The burden therefore shifts to plaintiff to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). As stated above, in attempting to establish the existence of this factual dispute, plaintiff may not rely upon the mere allegations or denials of his pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Rule 56(e); Matsushita, 475 U.S. at 586 n.11; First Nat'l Bank, 391 U.S. at 289; Strong v. France, 474 F.2d 747, 749 (9th Cir. 1973).

Turning first to defendants Rocha and Costello, who are counselors, plaintiff alleges in his amended complaint that prior to the attack, he wrote to defendant Rocha concerning his placement in a housing unit full of his enemies but was ignored, and that two days prior to the attack, he

8

provided defendant Costello with a list of his known enemies, including Osito. (Amend. Comp., 2:11-12 & 7:3-6.) In his opposition, plaintiff contends that pleas were made to defendants Rocha and Costello, but they did nothing. (Opp., 6:1-2.)

"Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" Id. at 1057 (quoting Farmer, 511 U.S. at 837). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" Id. (quoting Gibson v. County of Washoe, Nevada, 290 F.3d 1175, 1188 (9th Cir. 2002)).

Plaintiff has submitted no evidence that would support his claim that defendants Rocha and Costello violated his Eighth Amendment rights by acting with deliberate indifference to a serious threat to his safety. The general contention that plaintiff expressed concern to defendants but they did not do anything is insufficient to raise a triable issue of fact with respect to whether defendants knew of and disregarded a substantial risk to plaintiff's safety. Plaintiff was single celled and on walk alone status for his protection. Plaintiff has submitted no evidence that even with these protections, housing him in the SHU constituted a substantial risk to his safety and that defendants knew of this risk and disregarded it. Accordingly, defendants Rocha and Costello are entitled to judgment as a matter of law on plaintiff's Eighth Amendment claim against them.

With respect to defendant Scribner, plaintiff alleges in his amended complaint that his attorney wrote a letter to defendant on June 23, 2003, identifying plaintiff's enemies in the housing unit and demanding that plaintiff be moved to a protective custody building. (Amend. Comp., 2:25-27 & 3:1.) In his opposition, plaintiff contends that defendant ignored the letters to him, which allowed the attack on him to occur. (Opp., 12:10-14.) Plaintiff further contends that even if defendant Scribner did not see any of the letters, he is to blame because he is charge of his subordinates. (Id., 12:14-22.)

Under section 1983, liability may not be imposed on supervisory personnel for the actions of their employees under a theory of respondeat superior. When the named defendant holds a

supervisorial position, the causal link between the defendant and the claimed constitutional violation must be established. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978), cert. denied, 442 U.S. 941 (1979). To maintain his claim against defendant Scribner, plaintiff must set forth some evidence that defendant either: personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

Plaintiff has submitted no evidence that defendant Scribner knew of and disregarded a substantial risk to his safety, in violation of his Eighth Amendment rights. Plaintiff's argument that even if defendant did not receive the letters, he was responsible for his subordinates' failure to act has no merit. Defendant may not be held liable under section 1983 for the actions of his employees under a theory of respondeat superior. As previously stated, plaintiff was single celled and on walk alone status for his protection. Plaintiff has submitted no evidence that even with these protections, housing him in the SHU constituted a substantial risk to his safety and that defendant Scribner knew of this risk and disregarded it. Accordingly, defendant Scribner is entitled to judgment as a matter of law on plaintiff's Eighth Amendment claim against him.

With respect to defendants Saddi, Bailey, and German, who were present in the SHU during the incident in which plaintiff was allegedly stabbed, plaintiff disputes defendants' contentions that all the cell doors are solid thereby making it impossible for plaintiff to have been stabbed and that plaintiff chose to shower in the upper tier shower. Plaintiff submits evidence that while the cell doors on the lower tier where he was celled are solid, the cell doors on the upper tier are perforated with holes large enough for fingers, spears, writing pens, and other objects to pass through. (Opp., 2:20-25.) Further, plaintiff submits evidence that he was specifically directed by defendant Saddi to use the shower on the upper tier, which caused plaintiff to pass by a number of upper tier cells housing his enemies. (Id., 3:19-23; Gomez Dec.) Plaintiff submits evidence that the shower doors and the water are controlled by the officers in the control booth, so an inmate would not be able to

enter and take a shower if he was not supposed to. (Gomez Dec.) Finally, plaintiff submits evidence that although the shower was between cell numbers 15 and 16 and he has to pass by cell 15 to leave, the shower door hinges are the side of cell 15, so inmate have to step to the side when exiting and are at that time exposed to cell 16. (Opp., 13:17-27 & 14:1-3.)

The argument set forth by defendants, and the evidence tendered in support thereof, is not that they did not know of and disregard a substantial risk to plaintiff's safety. Rather, defendants move for summary adjudication on the grounds that plaintiff could not have been attacked as he alleges because the cell doors are solid and that no other inmate had access to him to harm him because he was on walk alone status. Defendants also argue that plaintiff voluntarily went up to the upper tier to shower. The evidence submitted by plaintiff is sufficient to raise a dispute with respect to these issues.

Finally, the court rejects defendants' argument that because plaintiff suffered only a <u>de minimis</u> injury, he cannot establish liability. Defendants have set forth no authority for the proposition that plaintiff must suffer an injury of a certain magnitude in order to maintain an Eighth Amendment claim and the court is aware of none. Defendants may be held liable for violating the Eighth Amendment if they know of and disregard an excessive *risk* to plaintiff's health or safety. <u>Farmer</u>, 511 U.S. at 837-38. There is no requirement that the harm which is risked actually befall the inmate. Accordingly, for the foregoing reasons, the court finds that defendants Saddi, Bailey, and German are not entitled to judgment as a matter of law on plaintiff's Eighth Amendment claim against them.

### 4. <u>Eighth Amendment Medical Care Claim</u>

To constitute cruel and unusual punishment in violation of the Eighth Amendment, prison conditions must involve "the wanton and unnecessary infliction of pain." <u>Rhodes v. Chapman</u>, 452 U.S. 337, 347 (1981). A prisoner's claim of inadequate medical care does not rise to the level of an Eighth Amendment violation unless (1) "the prison official deprived the prisoner of the 'minimal civilized measure of life's necessities,'" and (2) "the prison official 'acted with deliberate indifference in doing so.'" <u>Toguchi v. Chung</u>, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting <u>Hallett v. Morgan</u>, 296 F.3d 732, 744 (9th Cir. 2002) (citation omitted)). A prison official does not act in

1  a deliberately indifferent manner unless the official "knows of and disregards an excessive risk to
2  inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 834 (1994). Deliberate indifference may
3  be manifested "when prison officials deny, delay or intentionally interfere with medical treatment,"
4  or in the manner "in which prison physicians provide medical care." McGuckin v. Smith, 974 F.2d
5  1050, 1059 (9th Cir. 1992), overruled on other grounds, WMX Techs., Inc. v. Miller, 104 F.3d 1133,
6  1136 (9th Cir. 1997) (en banc). Where a prisoner is alleging a delay in receiving medical treatment,
7  the delay must have led to further harm in order for the prisoner to make a claim of deliberate
8  indifference to serious medical needs. McGuckin, 974 F.2d at 1060 (citing Shapely v. Nevada Bd.
9  of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985)).

10  It is undisputed that plaintiff was seen by RN Luna at 5:20 p.m., and told her that he had been
11  stabbed while showering at approximately 4:45 p.m., and that she observed a cut above plaintiff's
12  eye. (U.F. 11, 12, 13.) On June 28, 2003, at 9:00 p.m., plaintiff was seen by RN Miller. (U.F. 14.)
13  Plaintiff's left eye was swollen, and RN Miller found a small object lodged above plaintiff's left
14  eye. (U.F. 15, 16.) Dr. Kim subsequently removed a small, foreign object from plaintiff's left
15  eyebrow using forceps and a local anesthetic. (U.F. 17, 18.) Plaintiff was returned to his cell at
16  approximately 10:10 p.m. (U.F. 19.)

17  Defendants Saddi and Bailey's position is that they did not see plaintiff get stabbed, that
18  defendant Saddi did not see any blood on plaintiff's body or towel when plaintiff approached the
19  control booth, and that defendant Bailey saw approximately one drop of blood by the corner of
20  plaintiff's eye when he spoke with plaintiff. (Saddi Dec., ¶ 4; Bailey Dec., ¶ 5.) Defendants contend
21  that when plaintiff was seen by RN Luna at 5:20 p.m., he was not bleeding and he showed no signs
22  of distress. (Def. Exhibit A, pg. 23.) Luna cleaned the wound with Betadine and applied a steri-strip
23  to the wound, and plaintiff was returned to his cell. (Id.) Two days later, a tiny metal object was
24  removed from plaintiff's eyebrow using only a local antiseptic. Defendants argue that plaintiff was
25  not denied medical care and that his injury was not serious.

26  The court finds that defendants have met their initial burden of informing the court of the
27  basis for their motion, and identifying those portions of the record which they believe demonstrate
28  the absence of a genuine issue of material fact. The burden therefore shifts to plaintiff to establish

that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). As stated above, in attempting to establish the existence of this factual dispute, plaintiff may not rely upon the mere allegations or denials of his pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Rule 56(e); Matsushita, 475 U.S. at 586 n.11; First Nat'l Bank, 391 U.S. at 289; Strong v. France, 474 F.2d 747, 749 (9th Cir. 1973).

As previously set forth, "[d]eliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). In order to meet his burden, plaintiff must set forth evidence that supports the claim that defendants "[knew] of and disregard[ed] an excessive risk to [plaintiff's] health . . . ." Farmer, 511 U.S. at 837. Further, in situations involving an alleged delay in receiving treatment, the delay must have caused further harm, McGuckin, 974 F.2d at 1060 (internal citation omitted), and plaintiff's disagreement with the treatment rendered is insufficient to give rise to a claim for relief. Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981) (internal citation omitted).

In his amended complaint, plaintiff alleges that after he was stabbed, he was in great pain and bleeding profusely. (Amend. Comp., 4:2-3.) Plaintiff alleges that defendants Saddi, Bailey, and German could see that he needed medical attention and was bleeding, but failed to assist him. (Id., 4:5-25.) Plaintiff alleges that when Luna made her rounds, he got her attention and showed her his stab wound. (Id., 5:20-22.) Plaintiff alleges that Luna had him brought out of his cell so she could get a better look, but that she did not treat the wound or clean the dried blood. (Id., 5:23-25 & 6:1-2.) Plaintiff alleges that when he expressed concern that there was a piece of metal lodged in the wound, Luna told plaintiff she would contact the emergency room. (Id., 6:2-4.) Luna subsequently returned, told plaintiff that the emergency room nurse would not see him and to fill out a sick call slip, and gave plaintiff some antibiotic ointment. (Id., 6:6-10.)

Accepting as true plaintiff's allegation that he was bleeding profusely from the stab wound and that defendants saw the blood but failed to get medical attention for plaintiff, plaintiff has raised an issue of disputed fact with regard to whether or not defendants knew of and disregarded a need

for medical care. However, plaintiff has not submitted any evidence that the risk to his health allegedly disregarded by defendants was excessive or that the thirty-five minute delay between the incident and the arrival of RN Luna caused him further harm.[3] Although plaintiff disputes the adequacy of the care rendered by Luna, that claim is not at issue in this motion because Luna has not yet been made a party to this action. Further, it is undisputed that Luna did examine plaintiff, did check with emergency room staff, and did provide plaintiff with an antibiotic ointment. Thus, plaintiff had initial contact with a medical staff member thirty-five minutes after the spearing incident. With respect to the issues of the seriousness of the medical need and whether the thirty-five minute delay caused further harm, it is irrelevant that, as plaintiff contends, the contact with Luna occurred because she happened by on her rounds rather than because she was summoned by defendants. (Opp., 3:4-8.) Finally, it is undisputed that the wound was to plaintiff's eyebrow rather than plaintiff's eyeball, and that the piece of metal ultimately removed from plaintiff's eyebrow was small in size and capable of removal by forceps and a local antiseptic.

The court finds that plaintiff has not submitted any evidence that raises a triable issue of fact with respect to whether his medical need was serious within the meaning of Eighth Amendment jurisprudence or whether the thirty-five minute delay caused further harm to plaintiff. Accordingly, the court finds that defendants Saddi, Bailey, and German are entitled to judgment as a matter of law on plaintiff's Eighth Amendment medical care claim against them.

### D. Conclusion

For the reasons set forth above, the court finds that defendants Scribner, Rocha, and Costello are entitled to judgment as a matter of law on plaintiff's Eighth Amendment failure-to-protect claim against them, but that defendants Saddi, Bailey, and German are not entitled to judgment as a matter of law as to the failure-to-protect claim against them. Further, the court finds that defendants Saddi,

---

[3] Although plaintiff sets forth arguments in his opposition that between the first contact with Luna and the removal of the object by Dr. Kim two days later, his medical needs were left unaddressed, the amended complaint contains no claim that defendants Saddi, Bailey, and German acted with deliberate indifference to plaintiff's serious medical needs during that period of time. Further, the opposition does not contain any statements, accompanied by evidence or otherwise, that support a claim that defendants Saddi, Bailey, and German knew of and disregarded an excessive risk to plaintiff's health during that period of time. Thus, the conduct of defendants that is relevant to plaintiff's claim against them is the actions or omissions that occurred between the alleged stabbing incident and the encounter with Luna.

Bailey, and German are entitled to judgment as a matter of law on plaintiff's Eighth Amendment medical care claim against them. Accordingly, based on the foregoing, it is HEREBY RECOMMENDED that defendants' motion for summary judgment, filed July 19, 2005, be GRANTED IN PART AND DENIED IN PART as follows:

1. Defendants' motion for summary adjudication on plaintiff's Eighth Amendment failure-to-protect claim against defendants Scribner, Rocha, and Costello be GRANTED;

2. Defendants' motion for summary adjudication on plaintiff's Eighth Amendment failure-to-protect claim against defendants Saddi, Bailey, and German be DENIED; and

3. Defendants' motion for summary adjudication on plaintiff's Eighth Amendment medical care claim against defendants Saddi, Bailey, and German be GRANTED.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   December 15, 2005**              /s/ Lawrence J. O'Neill
b9ed48                                      UNITED STATES MAGISTRATE JUDGE